UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HARLESS,

        Plaintiff,

                                Civil Action 2:13-cv-13480

v.                              HONORABLE GERSHWIN A. DRAIN

DAVID DAVIS, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT CITY OF MADISON HEIGHT'S MOTION FOR SUMMARY JUDGMENT [#41] AND DENYING DEFENDANT DAVID DAVIS'S MOTION FOR SUMMARY JUDGMENT [#43]AND CANCELLING MAY 26, 2015 HEARING

## I.    INTRODUCTION

Plaintiff Mary Harless filed the instant 42 U.S.C. § 1983 action alleging that Defendant David Davis and the City of Madison Heights violated her constitutional right to be free from the excessive use of force under the Fourth Amendment. Presently before the Court are Davis's Motion for Summary Judgment and the City of Madison Heights's Motion for Summary Judgment, both filed on March 6, 2015. Upon review of the parties' briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will cancel the hearing and decide the present motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

Davis's Motion for Summary Judgment is fully briefed. However, Plaintiff failed to file a Responsive Brief to the City's Motion for Summary Judgment, thus the City's Motion is unopposed. The proof of service for the City's Motion for Summary Judgment indicates that it was served on March 6, 2015. Local Rule 7.1(c)(1) states that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. L.R. 7.1(c)(1). Responses to dispositive motions "must be filed within 21 days after service of the motion." E.D. Mich. L.R. 7.1(e)(1)(B). Accordingly, the response to the City's motion was due no later than March 31, 2015. *Id.*; *see also* Fed. R. Civ. P. 6(a) and 6(d). Upon review of the City's unopposed motion, the Court will grant the City's Motion for Summary Judgment. The Court will deny Davis's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

The incident giving rise to the present action occurred during the early morning hours of August 14, 2010. Plaintiff was living with her boyfriend, Michael Socha,[1] at a home Socha was renting with his parents. On August 13, 2010, Socha attended a family funeral. Socha's ex-girlfriend also attended the funeral, which upset the Plaintiff since Socha had not asked her to attend the funeral. When he came home, Plaintiff questioned him about the funeral and the two argued "forcefully." Socha left

---

[1] Plaintiff and Socha are now married.

and came back home around midnight.  Plaintiff consumed alcoholic beverages while Socha had been away from the house.

The two began to argue again.  Plaintiff admits they both were loud and that she was swearing at Socha. At some point after midnight, Plaintiff decided to have a cigarette and she and Socha moved outside onto the front porch where the argument "escalated." Plaintiff was yelling and continuing to use profanities on the front porch. Socha's mother, Debra Socha, was home at the time and she claims Plaintiff was aggressive, calling her son names and getting in his face.  She believed Plaintiff was trying to provoke her son into striking her.

Socha told Plaintiff that he wanted her to leave the residence.  Plaintiff refused to leave so Socha called the police.  During the call, Socha informed the dispatcher that Plaintiff had been drinking, that she was trying to provoke him and threatened to get violent with him.  He told the dispatcher he had asked Plaintiff to leave and that she would not do so.

Davis was dispatched at approximately 4:00 a.m. in response to Socha's call. As he drove to the scene, he could hear Plaintiff yelling profanities on the porch from several houses away.  Plaintiff admits that when Davis arrived, she could feel the effects of the alcohol she had consumed throughout the night.  Davis spoke briefly with Socha on the porch.  Socha informed him that Plaintiff had been drinking, that

-3-

she became upset and she would not leave. He told Davis that Plaintiff did not live at the home and that he wanted her to leave. Based on his observations of Plaintiff's "smell, her actions, her tone, her demeanor [and] her body language," Davis concluded that Plaintiff had been drinking. Dkt. No. 43, Ex. 1 at 36.

Davis decided to separate Plaintiff and Socha and asked her to move to the end of the driveway on the sidewalk. He attempted to de-escalate the situation by instructing Plaintiff "to calm down, to stop swearing," but Plaintiff continued to yell to Socha, who was still on the front porch with his mother and another officer who had arrived on the scene. *Id*. at 45, 76-77. Davis instructed Plaintiff to calm down and stop swearing but she would not cease her yelling and swearing.

At this point, Davis claims that he observed Plaintiff move toward Socha in an aggressive and assaultive manner. Davis testified at his deposition that "she actually had to bump into me to get by me . . . . She was so angry with him for whatever reason, that she was actually walking through me and that's when I put my hands up and I said you're under arrest." *Id*. at 46. Socha's mother also testified that she witnessed Plaintiff trying to get to Socha on the porch.

Davis decided to arrest Plaintiff for disorderly conduct because of "the screaming and the yelling at 4:00 in the morning with people in earshot." He informed Plaintiff that she was under arrest for disorderly conduct and he took her by

the wrist in order to lead her towards the police car.  According to Davis, Plaintiff pulled away and the two struggled for a moment while Davis attempted to grab Plaintiff's wrist again.  Davis admits that he placed Plaintiff in a "bear hug" in order to get control of her and picked her up off of the ground, causing the two to fall to the ground.  Davis landed on top of Plaintiff and she hit her head on the cement, resulting in an abrasion to the side of her face.  Davis claims that the two fell to the ground because he lost his balance due to the fact that Plaintiff was squirming. Plaintiff had an abrasion on the left side of her forehead as a result of the fall.  Plaintiff denies fidgeting in any manner.

Plaintiff denies moving toward Socha, but admits that she was "walking away" from Davis.  Dkt. No. 48, Ex. 2 at 56.  Plaintiff claims that she flicked her cigarette into the street and Davis told her to pick it up or she would be arrested for littering. She claims she picked up the cigarette butt and put it in her pocket and when she started to walk away, Davis grabbed her arm.  She further claims that Davis pulled her to him, picked her up, slammed her to the ground, put his knees to her back, cuffed her too tightly, forcefully stretched her arms, rolled her over, stepped on her right thigh, picked her up by the handcuffs, again extending her arms, dragged her and threw her into the back of the police car.

Once at the station, Plaintiff indicated that she wanted to go to the hospital.

-5-

Davis took Plaintiff to the police department where two firefighters attended to her injury. Davis and another officer then transported her to St. John Oakland. She was cleared for incarceration after the doctors conducted a CT scan of her head, which was normal.

Davis filled out a use of force form indicating that he "took suspect Harless to the ground." Dkt. No. 48, Ex. 5. Davis also noted the suspect's response to the police included "verbal resistance, resist cuffing, resist placement in police vehicle [and] disrespectful or obscene gesture." *Id*. Davis's supervisor concluded that Davis's "use of force was appropriate and necessary to effect an arrest and to also prevent a potential assault on witness/caller Michael Socha." *Id.*

Plaintiff was charged with disorderly conduct and interfering with a police officer. She was detained for two days until her arraignment and claims that she vomited several times during her two day stint in jail. She ultimately pled no contest to the disorderly conduct. Upon her release from jail, Plaintiff did not immediately go to the hospital. She sought medical treatment the day after her release.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v.*

*Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## B. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend IV. The relevant inquiry is whether the officers used more force than was reasonably necessary to make the arrest. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others,

-8-

and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.*

However, civil liability does not automatically attach upon a finding that an official's actions were unconstitutional. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). In *Saucier v. Katz*, 533 U. S. 194, 201-02 (2001), the Supreme Court noted that when evaluating claims of excessive force, the court must first decide whether – taking the facts in the light most favorable to Plaintiff – Defendant's conduct violated a constitutional right. If the answer to the first threshold question is yes, the next step is to determine whether the right was clearly established. *Katz*, 533 U.S. at 201-02. If the court finds that there was no constitutional violation, then the need for the qualified immunity analysis is no longer necessary. *Id.* at 201.

Davis argues that the Court should enter summary judgment in his favor because he is entitled to qualified immunity. He maintains that Plaintiff cannot demonstrate he violated her Fourth Amendment rights and, even assuming she could make such a demonstration, she cannot show her rights were clearly established.

Taking the evidence in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Davis's use of force was objectively reasonable under the Fourth Amendment. According to Plaintiff, at the time of Davis's unreasonable force, she was merely "walking away" from Davis and was not attempting to move toward, nor harm Socha. She further claims that once he put his hands on her to

effectuate the arrest, she was not fidgeting or squirming in any manner.  Moreover, accepting Plaintiff's version of the event in conjunction with the fact that the crime of disorderly conduct is not a serious crime, body slamming Plaintiff to the ground causing an abrasion to her face was an unreasonable use of force under the circumstances.

As to the second prong of the qualified immunity test, Davis argues that Plaintiff cannot show that a reasonable officer in his position would have known that he or she was violating a clearly established right.  Here, the unresolved factual disputes between Plaintiff and Davis prevent the Court from granting qualified immunity to Davis.  *See Kostrzewa v. City of Troy*, 247 F. 3d 633, 641-42 (6th Cir. 2001); *see also, Carpenter v. Bowling*, 276 Fed. App'x 423(6th Cir. May 2, 2008).  "When the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity."  *Bouggess v. Mattingly*, 482 F. 3d 886, 896 (6th Cir. 2007).   Davis is entitled to qualified immunity only if his testimony is credited and the Plaintiff's is not, thus his motion for summary judgment is denied.

### C.   *Monell* **claim**

A local government may be liable as an entity under § 1983 when "execution of government policy or custom, whether made by its lawmakers or by those whose

-10-

edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). To find municipal liability, Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Gardner v. Memphis Police Dep't*, 8 F. 3d 358, 364 (6th Cir. 1983). Additionally, Plaintiff must prove that: (1) "the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter," and (2) "such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc*., 32 F. 3d 989, 996 n. 8 (6th Cir. 1994).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Fisher v. Harden*, 398 F. 3d 837, 849 (6th Cir. 2005). "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 125 F. 3d 856, 865 (6th Cir. 1997); *see also Miller v. Sanilac County*, 606 F. 3d 240 (6th Cir. 2010) (The plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipal actor]

has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.")

Here, the evidence reveals that upon his hiring, the City placed Davis in a 16-week Field Training Officer Program where he had six trainers. *See* Dkt. No. 41, Ex. G at 8-13. After he passed his probationary period, Davis was given additional training during periodic, mandatory classes. *Id.* at 14. He was trained in the use of force continuum, how to employ hands-on force, including pressure point control tactics, to subdue a resistant individual and takedown maneuvers. *Id.* at 15, 19, 21, 57-58. He was also provided with the Department's policies and procedures, including its use of force policy. *Id.* at 15.

Moreover, Davis has never been disciplined for the use of excessive force during his employment with the City. With regard to the incident at issue here, he prepared a use of force form and his supervisor concluded that Davis's use of force was appropriate and necessary to effect an arrest and prevent harm to Socha.

Based on the foregoing evidence, Plaintiff's *Monell* claim cannot survive summary judgment. Plaintiff has failed to provide any evidence demonstrating inadequacy in training or supervision equating to deliberate indifference because the City ignored known or obvious consequences of Davis's actions. *See Fisher v. Hardon*, 398 F. 3d at 849. The City is therefore entitled to summary judgment in its

-12-

favor.

**IV.   CONCLUSION**

For the foregoing reasons, the City of Madison Heights's Motion for Summary

Judgment [#41] is GRANTED.  Defendant Davis's Motion for Summary Judgment

[#43] is DENIED.

SO ORDERED.

Dated: May 15, 2015                          /s/Gershwin A Drain_____
                                             GERSHWIN A. DRAIN
                                             UNITED STATES DISTRICT JUDGE